IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 SEP 11 PM 2:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CHARLES EDWARD RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 01-J-2594-S |
| ) | |
| CITY OF MOUNTAIN BROOK FIRE ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

ENTERED
SEP 11 2002

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 18), evidentiary materials in support of its motion (doc. 19), defendant's brief in support of its motion, plaintiff's response brief with supporting evidentiary materials (doc. 20) and defendant's reply. The court has reviewed the motion and the parties' other submissions.

### I. Factual Background

Plaintiff (pro se), a former firefighter, filed suit against the defendant Mountain Brook Fire Department alleging discrimination based upon his race and a disability (sleep apnea/snoring).

The plaintiff was hired by the defendant City of Mountain Brook Fire Department

1



in 1987. Plaintiff's depo. at 47. During the course of his 13 years with the fire department, the plaintiff alleges that he was harassed and discriminated against in a variety of different ways. The plaintiff alleges that soon after being hired by the defendant he overhead a conversation during which a co-worker used the term "nigger." Plaintiff's depo. at 67. Right before the plaintiff confronted the co-worker, a lieutenant came upon the scene and resolved the situation to the plaintiff's satisfaction. *Id.* at 69-70. In another incident, the plaintiff saw what he believed to be a hangman's noose on one of the desks in a room in the firehouse. Sometimes the noose would be in the drawer of the desk and sometimes on top of it. Plaintiff's depo. at 89. Later, the plaintiff was involved in an altercation with a co-worker named Don Huff. The plaintiff filed a complaint with the Jefferson County Personnel Board regarding the matter and Huff was ultimately transferred to another fire station. Plaintiff's depo. at 52, 60. On two separate occasions, the plaintiff complained that his cigarettes and coffee were "spiked." Plaintiff's depo. at 101-104. The plaintiff's physician examined him after these incidents and found him to be in good health. Plaintiff's depo. at 105.

Furthermore, the plaintiff claimed that he was repeatedly harassed by a co-worker, Donna Mason, about being a homosexual. Plaintiff's depo. at 97-100. Additionally, the plaintiff alleges that he was frequently followed. Plaintiff's depo. at 76-78. In 1996, the plaintiff was involved in an altercation with a co-worker, David Cost, in which the plaintiff accused Cost of slamming a door near his head. Plaintiff's depo. at 140-142. The fire department conducted an investigation into the incident, but the investigation

was concluded because Cost denied the allegation and the department could find no way to make an "objective determination" as to who was telling the truth. Exh. 24 to Plaintiff's depo.

After this incident, the plaintiff's doctor conducted a medical evaluation and concluded that Richardson should be placed on medical leave due to the fact that he suffered from Post Traumatic Stress Disorder resulting from his experiences in Vietnam. Exh. 22 to Plaintiff's depo.; Plaintiff's depo. at 143-44. The plaintiff was allowed to return to work after a psychiatrist could not conclusively determine if the plaintiff was a potential danger to others. Plaintiff's depo. at 153-54.

In the spring of 1996, after returning to work from his medical leave, the plaintiff participated in a rescue training exercise. The plaintiff appeared in distress after the exercise and his captain offered medical treatment for the plaintiff, but he declined. Plaintiff's depo. at 171.

In January of 1999, the plaintiff was involved in an incident with a Mountain Brook citizen while he was directing traffic. The driver was inattentive and veered into the lane where the plaintiff was standing. The plaintiff responded by pounding on the car and telling her to "get [her] butt back." Plaintiff's depo. at 177-79. A meeting was convened regarding this incident and the plaintiff told his superiors that "nothing happened." Plaintiff's depo. at 180-85. The plaintiff refused to say anything other than "nothing happened" in response to repeated questions from his superiors. *Id.* at 196. The city manager was then contacted to inquire about the incident because his chief

3

thought that the plaintiff was threatening him with bodily harm. Plaintiff's depo. at 187. Plaintiff never did give his superiors any substantive information about the incident involving directing the traffic in Mountain Brook. Plaintiff's depo. at 190-91. Plaintiff was then suspended because of his non-compliance with the investigation. *Id.* at 196. The plaintiff worked out a settlement wherein he would be suspended for 24 days due to the incident. However, the plaintiff alleges that he was coerced into signing this settlement and the citizen involved in the incident made racially derogatory statements towards him at the time. Plaintiff's depo. at 197-98. The plaintiff was subsequently hospitalized for "homicidal and suicidal tendencies" during his suspension period. Plaintiff's depo. at 211. The plaintiff has not been released by his doctor to return to work. Plaintiff's depo. at 253.

The plaintiff also generally alleges that he was subjected to harassment due to his sleep apnea/snoring. Plaintiff depo. at 258.

On May 7, 1999, the plaintiff filed an EEOC charge claiming discrimination based on race, age and disability. On July 15, 2001, the plaintiff received his right to sue notice from the EEOC.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the

4

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A

genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## III. Analysis

### A. ADEA Claim

The plaintiff appears to have abandoned his ADEA claim and thus it is not necessary to reach the merits of the claim. In the EEOC charge filed by the plaintiff, he alleged discrimination based on race, disability and age. Furthermore, in his original complaint he alleged discrimination under the ADEA. However, the plaintiff subsequently filed an amended complaint after being ordered to do so by Judge Buttram because his pro se original complaint failed to meet the requirements of the Federal Rules of Civil Procedure. (docs. 2, 4). In his amended complaint, the plaintiff only listed claims of discrimination based on race and disability. (doc. 4). An amended complaint supercedes a previous complaint. *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999). Additionally, plaintiff does not discuss his age discrimination claim in his brief. Therefore, the plaintiff's claim is deemed abandoned. *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995).

**B. ADA Claim**

In order to establish a prima facie case under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. (ADA), plaintiff must demonstrate that he: (1) has a disability; (2) is a qualified individual; and (3) was unlawfully subjected to discrimination because of the disability. *See, e.g., Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; and (B) a record of the impairment's existence; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *see, e.g., id.* at 1134.

The plaintiff has demonstrated that he was diagnosed with an impairment. The plaintiff was diagnosed by a doctor at UAB with sleep apnea which caused him to snore loudly. Plaintiff's depo. at 40, 258-59. However, the plaintiff has not produced any evidence that the impairment limits any major life activity. In fact, the plaintiff has admitted that the impairment does not substantially limit any of his daily life functions. Plaintiff's depo. at 260-61. Thus, the plaintiff has failed to demonstrate that he has a disability as defined under the ADA.[1]

Therefore, summary judgment shall be granted for the defendant as to the plaintiff's ADA claim.

---

[1] The plaintiff has also failed to demonstrate that he was subject to discrimination because of his disability. The plaintiff simply states that his co-workers complained of his snoring when he had to sleep at the station. Plaintiff's depo. at 258.

### C. Race Discrimination Claim

In the light most favorable to the non-moving party, the plaintiff's complaint asserts both a race based hostile environment claim and race based disparate treatment. At the outset defendant argues that the plaintiff's Title VII claims should be barred because he did not file his charge of discrimination with the EEOC within 180 days of the alleged discriminatory actions. However, under the "continuing violation doctrine" the plaintiff's claims do not fail based upon this time limitation. Pursuant to the "continuing violation doctrine," "where an employee charges an employer with continuously maintaining an employment practice that is violative of Title VII, [he] may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1262 (N.D. Ala. 2002) citing *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir. 1980). As noted by the Supreme Court, "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court in determining liability." *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). The plaintiff alleges at least one incident which occurred within 180 days of filing his EEOC charge and thus his claims are not barred.

In order to establish a claim for racial discrimination under Title VII based upon a hostile environment, the plaintiff must establish (1) that he belongs to a protected group, (2) that he has been subject to unwelcome harassment, (3) that the harassment was based

upon a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The harassment must be severe and pervasive enough both subjectively and objectively. *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). To determine whether the harassment is severe enough to create a hostile work environment, a court should consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it resulted in psychological harm. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Circumstances must be examined in their totality. *Id.* A few isolated comments or actions are insufficient to create a hostile environment, but rather, they must be so commonplace as to create an "atmosphere charged with racial hostility." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995).

While the plaintiff has alleged several acts of harassment that could be believed by a reasonable jury to constitute acts of racial discrimination, these instances occurred over a 13 year period of time. The instances of harassment which the plaintiff alleges as the basis for his claim include that a hangman's noose was placed on a desk in an office of

9

the fire station and that his cigarettes and coffee were "spiked" or "doped up" on two occasions by his co-workers. In another instance, a co-worker told him that he was a member of KKK. Plaintiff's depo. at 126.

The plaintiff alleges many other instances of harassment. However, in the plaintiff's deposition, he testifies that non-racial reasons existed for these other alleged acts of harassment. For example, the plaintiff alleges that a fellow worker told him that his "asshole sounded like it had a big ole dick stuck in it," but the plaintiff subsequently states that this is because he "was having gas problems in [his] sleep." Plaintiff's depo. at 75. In another instance, the plaintiff claims that his co-workers began following him around at work. Plaintiff's depo. at 76-78. However, plaintiff subsequently states that he thinks they were following him around because they thought he was "going out to smoke a joint." Plaintiff's dep. at 77. Plaintiff also states that a co-worker Donna Mason-Smith harassed him on a variety of occasions. Plaintiff's depo. at 97-100. However, the plaintiff stated in his deposition that the harassment occurred because he made fun of Mason-Smith when she didn't get a promotion. Plaintiff's depo. at 129. In another instance, the plaintiff alleges that he was harassed on multiple occasions by a co-worker named David Cost. Plaintiff's depo. at 141-42. However, the plaintiff again testified to a non-racial reason for the harassment by noting that Cost "harasses whoever he comes in contact with." Plaintiff's depo. at 158. In regard to these allegations of harassment, plaintiff did not testify that they were caused by racial animus and thus, they cannot be part of his racial discrimination claim.

10

Additionally, there were several instances of alleged harassment that the plaintiff brought to his superiors' attention, who addressed the situation to the plaintiff's satisfaction. Remedial action taken by an employer in response to an employees complaints absolves the employer from liability where the remedial action is reasonably likely to prevent the misconduct from recurring. *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996).

First, the plaintiff alleges that he was threatened with a gun by one of his co-workers. Following the plaintiff's complaint to his superiors, that co-worker was transferred to another station by the fire department. Plaintiff's depo. at 58-59. Second, the plaintiff overheard a conversation in which the word "nigger" was used. Plaintiff's depo. at 68. A lieutenant came upon the conversation and handled the situation to the plaintiff's satisfaction. Plaintiff's depo. at 69-70. Therefore, the fact that one situation was handled to the plaintiff's satisfaction and in the other situation the alleged cause of the problem was transferred to another station, show that the employer took such reasonable remedial action so as to protect itself from liability for these incidents.

Evaluating the totality of the circumstances, the plaintiff's allegations do not rise to the level necessary to demonstrate a hostile environment claim. *Edwards*, 49 F.3d at 1521.

Plaintiff also claims that he was subjected to disparate treatment because of his race. First, plaintiff claims that his suspension from the fire department was racially motivated. Secondly, plaintiff claims that the assignment of overtime was given out

11

differently based upon race.

In order to set forth a prima facie case of disparate treatment discrimination, plaintiff must generally demonstrate that (1) he was a member of a protected class, (2) the plaintiff suffered an adverse employment action, (3) that he was qualified to do the job, (4) similarly situated employees who were not members of the protected class were treated more favorably. *See, e.g., Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1228 (11th Cir. 2002). If the plaintiff meets these criteria, the burden shifts to the employer to put forth a legitimate non-discriminatory reason for the action. If the employer puts forth such a reason, burden shifts back to the plaintiff to demonstrate pretext. *Id.*

The plaintiff is an African-American and thus a member of a protected class. The plaintiff was suspended from the Mountain Brook Fire Department and suffered an adverse employment action. Changes in the terms or conditions of employment that are both "serious and material" constitute an adverse employment action. *Davis v. Town of Lake Park,* 245 F.3d 1232, 1239 (11th Cir. 2002). A suspension clearly falls within this definition. *Hudson v. Norfolk Southern Ry. Co.,* 209 F.Supp.2d 1301 (N.D. Ga. 2001)

Likewise, making overtime available to white employees, but not to a black employee, as claimed by the plaintiff, is an adverse employment action. *See Bass v. Board of County Commissioners,* 256 F.3d 1095, 1118 (11th Cir. 2001); *Shannon v. BellSouth Telecommunications, Inc.,* 292 F.3d 712, 716 (11th Cir. 2002). Therefore, both of the plaintiff's alleged instances of disparate treatment qualify as adverse employment actions.

12

However, plaintiff must also demonstrate that similarly situated employees outside the protected class were treated more favorably. With respect to his suspension, the plaintiff has not demonstrated or even alleged that there were any similarly situated employees who were not members of the protected class and who received a lesser sanction for similar conduct. *See, e.g., Hudson*, 209 F.Supp.2d 1301. Therefore, plaintiff has failed to establish a prima facie case as to his alleged disparate treatment claim relating to his suspension.

In regard to his denial of overtime, the plaintiff has only alleged that white firefighters received overtime when he did not. The plaintiff has not demonstrated that these white firefighters are similarly situated to himself. Whether employees are similarly situated with respect to establishing a prima facie case is determined by whether employees are subjected to the same or different employment policies. *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999). The relevant employment policy is that the employees with the most seniority get overtime. Plaintiff has failed to demonstrate that any employees with equal or less seniority outside the protected class received overtime when he did not. Plaintiff's depo. at 293-96.[2]

Therefore, the plaintiff has failed to demonstrate that he was treated less favorably than similarly situated employees outside of the protected class in relation to the

---

[2]The only firefighter with less seniority than the plaintiff who plaintiff demonstrated to have received overtime, while the plaintiff has not, is in fact African-American himself. Plaintiff's depo. at 106, 115-16, 296.

assignment of overtime. Thus, defendant's motion for summary judgment on this claim shall be granted.

## IV. Conclusion

The court, finding that there are no genuine issues of material fact, **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE.** Each party is to bear its own costs.

**DONE** and **ORDERED** this _11_ day of September, 2002.

Inge P. Johnson
U.S. District Judge